UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| MARY BOE and<br>ALINE M. THIBODEAUX<br><br>VERSUS<br><br>HEART CLINIC OF HAMMOND, LLC | CIVIL ACTION NO.:<br><br>SECTION: " "<br><br>MAGISTRATE ( ) |

## COMPLAINT AND JURY DEMAND

### I. INTRODUCTION

1. This is a proceeding for damages and injunctive relief to redress the deprivation of rights secured to Aline M. Thibodeaux ("Thibodeaux" or "Plaintiff-Thibodaux") and Mary Boe ("Boe" or "Plaintiff-Boe") by the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12101 et seq. ("ADAAA"), Title VII of the Civil Rights Act of 1964 as amended, and the Louisiana Employment Discrimination Law, La. R.S. 23:301 et seq.

2. The purpose of the ADAAA and parallel Louisiana law is to eliminate employment discrimination against individuals with disabilities. The ADAAA and concurrent state law make it unlawful to intentionally discriminate against a qualified employee on the basis of the person's disability, having a record of a disability, or being regarded as having a disability.

3. The purpose of Title VII as it applies here and parallel Louisiana law is the eliminate retaliation against individuals who have complained in good faith about sexual harassment. Title VII makes it unlawful to intentionally retaliating against employees who complain about or oppose sexual harassment.

4. As alleged further below, Plaintiffs' employer discriminated and retaliated against Plaintiff's when it took adverse employment action against them in a pattern and practice of disability

discrimination/retaliation because (for each) their disability, record of a disability, and/or perceived disability, and/or because they exercised their rights under the ADA and parallel Louisiana law, and sexual harassment and retaliation after Plaintiffs complained or opposed said harassment.

## JURISDICTION

5. The jurisdiction of the Court over this controversy is invoked pursuant to the provisions of 28 U.S.C. §1331, 42 U.S.C. §12117(a), and 28 U.S.C. §1367.

## VENUE.

6. The unlawful employment practices alleged below were committed within the State of Louisiana. Venue, therefore, is proper in the United States District Court for the Middle District of Louisiana under 42 U.S.C. § 2000e-5(f)(3). Venue also is appropriate as to Plaintiffs' state law claims in the United States District Court for the Middle District of Louisiana under 28 U.S.C. § 1391.

## PARTIES

7. Thibodeaux is a resident of Tangipahoa Parish, Louisiana and is a person entitled to protection pursuant to the provisions of 42 U.S.C. §12111(8) (and parallel Louisiana law), Title VII, as amended (and parallel Louisiana law).

8. Boe is a resident of Tangipahoa Parish, Louisiana and is a person entitled to protection pursuant to the provisions of 42 U.S.C. §12111(8) (and parallel Louisiana law), Title VII, as amended (and parallel Louisiana law).

9. Defendant, Heart Clinic of Hammond, LLC ("HCH" or "Defendant"), is a Louisiana entity located in Hammond, Louisiana and serving patients. According to the secretary of state its owner/manager, Dr. Ghiath M. Mikdadi ("Dr. Mikdadi"), resides in Baton Rouge. HCH was Plaintiffs' employer within the meaning of 29 U.S.C. § 2611(4), 42 U.S.C. §12111(5)(A), and La. R.S. 23:302 at all times relevant to this action.

## FACTS

10. Plaintiff-Thibodeaux began her employment with Defendant as the Chief Operating Officer ("CEO") in 2011, when HCH was established as an LLC.

11. HCH's owner and founder is Dr. Mikdadi, a cardiologist.

12. There are approximately 30 employees employed by HCH.

13. Plaintiff-Thibodeaux had worked under Dr. Mikdadi during his tenure as an employee of other cardiac clinics from 1996 to 2011 primarily as a cardio ultra sound technician.

14. Plaintiff Boe began working under Plaintiff-Thibodeaux for HCH in May of 2012 as a Receptionist/Coder.

15. Dr. Mikdadi sexually harassed Plaintiff-Thibodeaux by seeking to use his position of power over her to get her to agree to a sexual relationship.

16. Plaintiff-Thibodeaux did not welcome or want the sexual advances and complained to Dr. Mikdadi to stop.

17. Dr. Mikdadi sexually harassed Plaintiff-Thibodeaux by seeking to use his position of power over her to get her to agree to a sexual relationship.

18. This was quid quo pro harassment that continued after complaints to stops thereby creating direct liability under Title VII.

19. There was no higher person than Dr. Mikdadi to complain to. Plaintiff-Thibodeaux also complained to Dr. Mikdadi that he was sending text messages to female employees and keep his personal relationships out of the office environment. The employees were aware of his indiscretions and had commented on them several times. He listened and commented he could do want he wanted. Thibodeaux explained it was going to get him in trouble and he indicated he was above all that and no one could do him anything. Immediately after Dr. Mikdadi became very difficult to deal with. He was abusive, threatening and multiple disagreements myself, to the staff, patients and others.

20. During the fall of 2015, Plaintiff-Thibodeaux had a record of disability involving a significant breast lump.

21. Plaintiff-Thibodeaux planned surgery to address her breast issue for December 23, 2015.

22. During a period when Plaintiff-Thibodeaux was emotionally upset about the prospect of cancer and, in any event, serious surgery, Dr. Mikdadi harassed her by seeking a sexual relationship just before she had to leave for surgery.

23. Dr. Mikdadi conveyed to Thibodeaux that her job would go smoother if she cooperated with his romantic advances.

24. Plaintiff-Thibodeaux complained frequently to Dr. Mikdadi to stop the unwanted and unwelcome sexual advances.

25. After surgery for her breast mass, Plaintiff-Thibodeaux was diagnosed with Major Depression caused by Dr. Mikdadi's harassment, hostile work environment, ongoing work harassment even after office hours.

26. Plaintiff-Thibodeaux alleges that her physiatrist has determined that Dr. Mikdadi's sexual harassment ongoing calls caused her major depression and his relentless questioning her illness and demanding work while she was ill made her condition worse.

27. Plaintiff-Thibodaux had a record of disability of depression requiring a medical leave beginning on or about December 23, 2015 as her condition was fully disclosed to Defendant.

28. Plaintiff-Thibodeaux began to see a psychiatrist at Ochsner Clinic.

29. Melisa Bennet ("Bennet") is the Marketing Reprehensive and was used by Dr. Mikdadi to harass Plaintiff-Thibodeaux after her complaints about sexual harassment and the establishment of a record of disability due to her major depression.

30. Plaintiff-Thibodeaux asserts that frequent calls from Bennett questioning her illness and demanding that she work while sick was motivated by Dr. Mikdadi as retaliation due to her complaints about sexual harassment, hostile work environment, age discrimination and retaliation and disability discrimination.

31. Bennett came to Thibodaux's home almost every day during her medical leave suggesting Thibodeaux was needed at the office immediately. It was known by Dr. Mikdadi that undue work stress had indeed caused her depression and continued stress coming from work during her medical leave was very detrimental to her recovery.

32. Bennett told Thibodeaux that Dr. Mikdadi was very upset about her medical leave for depression and that Dr. Mikdadi is changing all procedures and desperately needs her (Thibodeaux) back at work.

33. Defendant knew, or should have known, that such relentless pressure ordered by Dr. Mikdadi during her medical leave would worsen her condition and complicate her recovery. Indeed, Dr. Mikdadi was

specifically told by Thibodeaux that physician indicated it was necessary for her to be away from her job for the periods of time specified on her work slips.

34. On approximately February 20, 2016, Thibodeaux told Bennet that her psychiatrist was going to release her to return to work within a couple of weeks.

35. On March 3, 2015, Defendant terminated Thibodeaux without any reasonable stated non-discriminatory reason just days before her return to work.

36. Immediately thereafter, Dr. Mikdadi placed Bennett in Thibodeaux's position as CEO and administrator.

37. In May 2012, co-Plaintiff, Mary Boe ("Boe" or "Plaintiff-Boe") had been hired as a receptionist. Boe was responsible for giving assistance in all non-medical administrative tasks.

38. Plaintiff Boe has a record of disability as to Type I juvenile diabetes requiring an insulin pump.

39. In November 2015 Plaintiff-Boe needed a four-day hospital stay involving an ICU stay for stomach problems complicated by very high blood sugar from diabetes. Dr. Mikdadi was advised of the need for this medical leave and the medical reasons.

40. During this period, Boe also had a diabetic emergency at work when her blood sugar spiked to over 1000. She was told to go home and see her physicians.

41. Dr. Mikdadi was advised Boe is a brittle diabetic. He knew this because he was told and he is a doctor.

42. In June 2016, Boe also needed a short hospital stay in ICU for a bacterial infection complicated by weakness from diabetes. During this hospital stay, Dr. Mikdadi visited the ICU's nurse's station and viewed Boe's medical record.

43. Bennet began to question Boe and others who had diabetes with questions like "How sick does (diabetes) it make you?" Bennet also asked "What are the complications?" and "Other people in the office aren't as sick as you and they have diabetes!"

44. After an incident when Boe's blood sugar was high at work, Bennet called Boe in review her personnel file, which included documents about her medical leaves and request for accommodations to see doctors

and get medical leave. Bennet exclaimed "Your file is too thick with doctor notes!" and "I can see this is going to be a problem."

45. The above referenced medical leaves for both Plaintiffs, and their related doctors appointments are protected activity under the ADAAA and parallel Louisiana law.

46. Dr. Mikdadi, as with Plaintiff-Thibodeaux, also sexually harassed Boe.

47. For example, on January 31, 2016, Dr. Mikdadi texted Boe as follows: "I love the way you did your legs."

48. On February 1, 2016, Dr. Mikdadi texted Boe that he liked "sexy pictures," to Boe that "U f__king look very good;" "very sexy" ... "I love cleavage;" and, "I care about you."

49. Plaintiff-Boe made it clear to Dr. Mikdadi that she did not welcome sexual advances several times. Dr. Mikdadi ignored these complaints. Thibodeaux also complained to Dr. Mikdadi that he needed to stop sexually harassing Boe and other female employees. Dr. Mikdadi's failure to respond legally has created liability under Title VII.

50. Boe was never written up according to Defendant's policy and practice of progressive discipline.

51. On August 10, 2016, Bennet told Plaintiff that she and Dr. Mikdadi spoke about her illness and both believe Boe is disabled and must be on disability. She said he would write a letter about Boe's alleged inability to work due to disability to get her disability coverage. She wanted Boe to come and train her replacement although Plaintiff was off of Defendant's payroll.

52. On August 10, 2016, Defendant terminated Boe without any reasonable stated non-discriminatory reason. Boe was never paid a salary after that. When Dr. Mikdadi learned that Boe was complaining about his unwanted sexually harassing texts and other unwelcome advances, he sent a text to Thibodeaux referring to Boe that "I can fire her ass and put her on the street and she can shove them where the sun don't shine and since you care about her you tell her to stop talking about them [referring to the sexual texts]."

53. At that time, Defendant insisted Boe submit to long-term disability. Dr. Mikdadi insisted she was disabled and wrote her a letter stating she was disabled.

54. The ADAAA and parallel Louisiana law requires that, if an employer becomes concerned about an employees medical condition and request for accommodation, the employer must enter a good faith interactive with the employee to enable the employee to remain employed considering the employees limitations, qualifications and experience.

55. Dr. Mikdadi utterly failed to enter a good faith interactive process. Instead, without interacting as required, he insisted Boe submit to long-term disability.

56. After terminating Boe, he even had Bennet text Boe on August 25, 2016 after Boe had been removed and was not receiving pay, that Defendant "can back date [the disability application] from when you were in ICU."

57. To rebut this demand from Defendant that Boe must submit to disability insurance, and in an attempt to get her job back, Boe provided Dr. Mikdadi letters from Dr. Leonard C. Treanor (Internal Medicine) and Dr. Harold J. Miller (Endocrinology for diabetes) both stating unequivocally that Boe is not disabled, she had no restrictions and is able to work full time in any capacity.

58. Bennet received the letter and stated she did not believe Boe's treating physicians could say she is not disabled and Dr. Mikdadi feels the same way. But, incredibly, at the same time, Dr. Mikdadi told Thibodeaux he wanted to put Boe out on disability. He said that way he could get rid of Boe and she couldn't sue him for sexual harassment.

59. Dr. Mikdadi ignored these medical options of Boe's treating physicians. Instead he responded, without any good faith attempt to interact with Plaintiff or her physicians as to his concerns, by having Bennet deliver the following letter to Boe that stated:

> Mary has very brittle type 1 diabetes mellitus requiring insulin pump. She has extreme fluctuations in her glucose levels with multiple episodes of life threatening hypoglycemia that required ICU hospitalization several times. In addition, she has episodes of very high glucose, which also require hospitalization. She has developed diabetic gastropathy and has very severe incapacitating nausea and vomiting. She is completely disabled and is unable to perform any of her job duties. For that reason, we had to lay her off due to disability. If you have any questions, please do not hesitate to call me.

60. Defendant also violated the ADAAA and parallel Louisiana law with because of retaliation after her termination.

61. Plaintiff-Boe secured a position of Administrative Assistant with Dr. Bruce M. Ennis's (Cardiology like Defendant) on November 2, 2016.

62. After working for a couple of weeks, after getting the job because Dr. Ennis was also a Cardiologist like Dr. Mikdadi, a question arose as to how Dr. Mikdadi's office might handle a certain administrative issue. Boe's supervisor in Dr. Ennis' office called Bennet to Dr. Mikdadi's office to seek some advice.

63. On that call, and in spite of never being written up for any misconduct or deficient performance, Bennet gave Boe a very bad reference, upon information and belief, also referring to Boe's medical condition.

64. Dr. Ennis terminated Boe on November 16, 2017 for no reason. Boe learned in a text that, during the conversation between Bennet and Clair Ennis, Dr. Ennis' Administrative Manager, Boe's medical condition was discussed.

65. This constituted Defendant's post-termination retaliation, which interfered with Boe's good faith attempt to mitigate her economic losses by clearly gaining substantially similar employment.

66. This post termination retaliation by Defendant has created significant damages to Plaintiff-Boe, including lost pay and benefits and emotional distress.

67. Plaintiffs assert that whatever reasons the Defendant ultimately uses to justify his termination are a pretext for disability and discrimination retaliation under Louisiana law and under the ADAAA and retaliation under the ADAAA.

68. Plaintiffs both contend that Defendant's violation of the ADAAA, Title VII and parallel Louisiana law was do to a blatant disregard for their federally protected rights and her rights under Louisiana law.

## DAMAGES

69. As a direct and proximate consequence of Defendants' unlawful and/or discriminatory policies and practices, Plaintiff has suffered a loss of income, including, but not limited to, past and future wages, reinstatement, benefits, payment for COBRA insurance and various other expenses, pain and suffering, mental anguish, compensatory damages, punitive damages, attorney's fees, costs and pre and post termination judicial interest all to be specified at trial.

**FIRST CLAIM FOR RELIEF – SEX HARASSMENT AND RETALIATION**

70. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 69, inclusive herein.

71. Plaintiffs alleges that their terminations (for Thibodeaux on or about March 3, 2016 and Boe on or about August 10, 2016) constitute a sufficient pattern and practice of similar discrimination prohibited by the ADAAA (disability discrimination and retaliation) and Title VII (sexual harassment and retaliation) and parallel Louisiana law

72. This pattern and practice justifies this joint Plaintiff Complaint.

73. Plaintiffs claim that the Defendant thought they were each actually disabled and/or regarded as disabled. This was a motivating factor in their terminations.

74. Plaintiffs allege that they were terminated due to disability discrimination and/or retaliation for seeking accommodations of medical leave and time off for doctor's appointments.

75. Plaintiffs allege that their termination was in blatant disregard of his federally protected rights under the ADAAA. Accordingly, Plaintiff alleges that punitive damages are appropriate herein.

76. Defendant failed to enter a good faith integrative process in violation of the ADAAA when it began to have concerns over Plaintiff's medical condition.

77. Due to the above and foregoing allegations, defendant is liable unto plaintiff for termination due to disability discrimination pursuant to the ADAAA, as amended, and concurrent Louisiana law; thus Defendant is liable for:

    A. Back-pay including benefits;

    B. Front-pay including benefits;

    C. Mental anguish (uncapped emotion distress damages under Louisiana law);

    D. Humiliation/embarrassment;

    E. Loss of enjoyment of life;

    F. Medical expenses;

    G.    Pre and post judgment interest;

    H.    Punitive Damages;

    I.    Attorney's fees;

    J.    Costs of these proceedings; and

    K.    Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

## SECOND CLAIM FOR RELIEF -- DISABILITY DISCRIMINATION AND RETALIATION

78. Plaintiff restates, re-alleges and re-avers and hereby incorporates by reference any and all allegations of paragraphs 1 through 69, inclusive herein.

79. Due to the above and foregoing allegations, defendant is liable unto plaintiff for termination due to disability discrimination pursuant to the ADAAA, as amended, and concurrent Louisiana law; thus Defendant is liable for:

    A.    Back-pay including benefits;

    B.    Front-pay including benefits;

    C.    Mental anguish (uncapped emotion distress damages under Louisiana law);

    D.    Humiliation/embarrassment;

    E.    Loss of enjoyment of life;

    F.    Medical expenses;

    G.    Pre and post judgment interest;

    H.    Punitive Damages;

    I.    Attorney's fees;

    J.    Costs of these proceedings; and

K.    Injunctive relief enjoining defendant from interfering with plaintiff's efforts to obtain future employment and enjoining and permanently restraining these violations of Louisiana Law and Federal law.

## IV. JURY DEMAND

80.    Plaintiffs requests trial by jury.

81.    Plaintiffs reserve their right to supplement and amend this Complaint upon the discovery of additional facts.

82.    Plaintiff shows amicable demand to no avail.

WHEREFORE, Plaintiffs, Aline M. Thibodeaux and Mary Boe, prays that Defendant, Heart Clinic of Hammond, LLC be duly cited to appear and answer this Complaint and Jury Demand and, after due proceedings and legal delays, there be judgment herein in favor of your plaintiff, and against defendant, as detailed in the foregoing Complaint and Jury Demand and in an amount reasonable in the premises, together with legal interest from the date of judicial demand and judgment, all costs of these proceedings, reasonable attorney's fees, punitive damages and any and all general and equitable relief deemed appropriate by this Honorable Court under the circumstances.

Respectfully submitted,

James L. Arruebarrena (#22235) T.A.
James L. Arruebarrena, LLC
1010 Common Street, Suite 3000
New Orleans, Louisiana 70112
Telephone (504) 525-2520
Facsimile (504) 518-4432
jim@unfairtermination.com

**Attorney for Plaintiffs**

**SERVER VIA SUMMONS**
**To Heart Clinic of Hammond, LLC's**
**Agent for service of process:**

**Dr. Ghiath Mikdadi**
**16033 Doctors Blvd.**
**Hammond, LA 70403**